### TAYLOR *vs.* ANDRUS.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF ST. LANDRY, THE JUDGE OF THE SIXTH PRESIDING.

Contracts of hiring, must be construed and modified by the usages, customs, and general understanding of parties in the country where they are made ; as a slave, hired for an ostler in a country inn, may be used also to drive a wagon, to haul provisions and fuel for the tavern.

So, where a slave was hired as an ostler in a small town, and he was employed to drive a wagon and haul wood to the tavern, and was acci‑dentally killed : *Held*, that the *owner cannot recover his value*, as having been improperly used or employed.

This is an action for the value of a slave which the plaintiff hired to the defendant, and who was killed whilst in the employ of the latter. The plaintiff alleges, that he hired, for one year, his slave Henry, of the value of fifteen hundred dollars, to the defendant, as an ostler in the town of Opelousas, a description of service in which he was well skilled, and which is free from danger ; but that the defendant, disregarding his agreement, on the 11th of May, 1839, employed said slave to drive a wagon and team ; that some of the horses were ungovernable, vicious and dangerous, known to be such to the defendant, and ran away with the wagon, threw the slave Henry to the ground with great violence, drawing the wagon over him, fracturing his leg, and inflicting wounds of which he soon after died. That the defendant, by reason of his having diverted said slave

WESTERN DIST.
September, 1840.

TAYLOR
vs.
ANDRUS.

from his employment as *an ostler*, and employed him in a dangerous service, not intended by the contract of hire, and out of his proper business as an ostler, has rendered himself liable for his loss and to pay his value; for which he prays judgment.

The defendant pleaded a general denial.

The evidence clearly showed, that the defendant had employed the boy Henry to drive a wagon and team in hauling wood to his hotel in the town of Opelousas. That, on going out of town for the third load, in descending to a bridge over a small bayou, some of the horses took fright and began running. The boy was thrown off, and the wagon run over him, broke and fractured his leg, bruised and hurt him so that he soon after died. The occurrence is shown to have been purely accidental. It appears, however, in evidence, that the defendant acknowledged to the plaintiff's attorney that he had hired the boy Henry as an ostler, and when he was about using him, on a former occasion, to drive a hack, he asked the consent of Dr. Taylor, the owner; but that, in the present case, he had not done so.

It further appeared, the defendant had a very vicious horse, which he said was so bad he could do nothing with him. One witness (bar-keeper,) declared that when the boy started, he heard the defendant forbid the boy Henry from putting the vicious horse in the wagon. The boy was then on the leading horse, and ready to drive out at the gate. The vicious horse was jumping, and the defendant ordered the boy never to take this horse again, and to take him out of the wagon, and went into the house. The boy, it seems, disobeyed, and kept the vicious horse in gear. He went to haul wood for the house, and one of the defendant's boys was with him and rode in the wagon, and, according to some accounts, was cracking a whip while going down a small descent to the bridge, which was the probable cause of the horses becoming affrighted and running away with the wagon.

On the whole evidence of the case, and after receiving a charge from the judge, the jury returned a verdict of seven hundred dollars for the plaintiff; and from judgment rendered thereon, the defendant appealed.

*W. B.* and *T. H. Lewis,* for the plaintiff, insisted on the affirmance of the judgment. They argued to show that the defendant was guilty of neglect in allowing the slave to be employed in driving a wagon, especially when it is shown that the defendant well knew one of the horses was vicious, unmanageable and dangerous. He illegally diverted the slave from the employment for which he was hired (that of an ostler,) to the more dangerous one of driving a wagon and team. The law of bailment was cited and relied on.

2. Where a slave is hired as an ostler, the law expressly forbids that he shall be otherwise employed; and, if any accident happens, the hirer is responsible for neglect and for not taking the proper care he was bound to do. *Story on Bailments, verbo Hiring,* 263, *section* 39; *Louisiana Code,* 2681-2.

*Voorhies* and *Swayze,* for the defendant.

1. The defendant ought not to be made responsible for the loss of the slave Henry, who was accidentally killed. He had no control over the act from which the accident resulted. On the contrary, it seems that he expressly forbade the slave Henry from driving the wagon; but, unfortunately, the order was disregarded.

2. The law exacts of the lessee but ordinary diligence, in the preservation of the property. The defendant, in this instance, exercised not only ordinary but extraordinary diligence; and it is clear, that he could not have prevented the accident had he used all the diligence which a prudent man would have done in the preservation of his own property. Hence, no liability results. *Story on Bailment, pages* 263-4 and 5; *Kent's Commentaries, vol.* 2, *p.* 456; *Jones on Bailments, p.* 26, 90.

3. Admitting that the defendant *permitted* the slave Henry to drive the wagon on this occasion, yet it was not beyond

the sphere of an ostler at a country inn, whose services, it cannot be presumed, were to be exclusively confined to the care of the horses.

*Morphy, J.,* delivered the opinion of the court.

This is a claim for the value of a slave alleged to have been hired to defendant as an ostler, and killed while employed by the defendant to drive a wagon, a service said to be different from that for which he had been hired. The case was laid before a jury, who brought in a verdict for the plaintiff. After an unsuccessful attempt to obtain a new trial, the defendant appealed.

The evidence shows that the defendant, who is a tavern-keeper, employed plaintiff's slave, together with one of his own, to haul wood in a wagon for the use of his house ; that one of his horses being rather skittish and vicious, defendant (says one witness) cautioned the boy to be careful of him ; another witness says that he had ordered him not to use this particular horse. After taking to defendant's house two or three loads, the horses ran away on their way back to the woods with the empty wagon ; the plaintiff's slave fell from the horse he was riding, broke his leg, and died shortly after.

There is no testimony that the boy was hired as an ostler. The defendant admitted, after the accident, that he was in his employ as such ; this admission alone would prove the use defendant made of the boy rather than any agreement on the subject with his master ; but it is coupled with the circumstance that on a previous occasion, the defendant, before using the slave as a hack-driver, asked plaintiff's consent to do so. This conduct of defendant gives strong countenance to the averment in the petition, that the slave was hired expressly as an ostler. Admitting such to be the fact, it by no means follows that the hirer was not to exact from the slave any other kind of service whatever. An intelligent being like a slave, cannot be assimilated to a horse or an inanimate object, the particular uses of both, which are limited, and cannot be changed without materially impairing their value or utility. A race horse, for instance, would lose

all his value as such, were he to be put to the plough or to a dray. A slave, although hired as possessing a particular talent, is expected to render numberless other services, especially at a country inn, where there is seldom sufficient employment for his particular talent or trade. These other services or uses he may be put to, cannot in any way detract from his value, unless from their nature they be calculated to render him less fit for his principal occupation or talent; as for instance, if a seamstress, hired expressly as such, was for a long time used as a washerwoman or as a field hand. Contracts must necessarily be modified by the usages, custom and general understanding of each country in relation to them. Who, among us, would think himself precluded from using a slave, hired as a cook, to do a little work in a garden, or from sending him for a cart-load of wood for the use of the kitchen? In like manner, had the defendant sent the plaintiff's boy for a load of hay or fodder to feed his horses, his right to do so could hardly be questioned, and the accident might have happened on such an occasion as in the present instance. If two or three hours in the day were sufficient to do his work as an ostler, at defendant's tavern, was it contemplated by either of the contracting parties that the boy should remain idle the balance of the day? Certainly not. It then remains to inquire whether the service of driving a wagon be a dangerous one, calculated to lessen the value of plaintiff's slave as an ostler. Whether bound to ask permission or not, the defendant had obtained plaintiff's permission for his slave to drive a hack. It is difficult to believe that he would have withheld it for driving a wagon, an occupation which cannot be more dangerous. We incline to think it much less dangerous; for horses, are more apt to run away with a hack than with a heavy wagon. The driving of a hack or wagon can hardly be considered as foreign to the business of an ostler. It certainly could not render the boy less fit for it. Upon the whole, we do not see in the conduct of the defendant, any fault or neglect that should make him liable for a loss that might be considered as purely accidental. The jury gave a verdict for seven hundred dollars, when the

TAYLOR
*vs.*
ANDRUS.

The contract of hiring must be construed and modified by the usages, customs and general understanding of parties in the country where they are made; as, a slave hired as an ostler in a country inn, may be used also to drive a wagon to haul provisions and fuel for the tavern.

So, where a slave was hired as an ostler in a small town, and he was employed to drive a wagon and haul wood, in which he was accidentally killed: *Held*, that the *owner cannot recover his value*, as having been improperly used or employed.

value of the boy was proved to be fifteen hundred dollars; being no doubt at a loss to reconcile the law, as stated to them with their sense of natural justice, they split the difference. This we cannot do.

It is, therefore, ordered and decreed, that the judgment of the District Court be annulled, avoided and reversed; the verdict set aside, and that there be judgment for the defendant, with costs in both courts.